1
2
3
4
5
6
7

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

NATHAN C. BARR,

                  Petitioner,                No. CIV S-05-2091 LKK EFB P

     vs.

D. RUNNELS,

                  Respondent.          <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

Petitioner is a state prisoner proceeding *in propria persona* with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges a September 6, 2001 judgment of conviction entered against him in Sacramento County Superior Court on charges of murder with personal use of a firearm. He seeks relief on the grounds that: (1) the admission into evidence of his non-testifying co-defendant's hearsay statements violated his Sixth Amendment right to confront the witnesses against him; (2) constructive amendment of the information violated his Fifth and Fourteenth Amendment right to due process; (3) he had insufficient notice of the charges against him, in violation of the Sixth Amendment; and (4) his trial counsel rendered ineffective assistance. Upon careful consideration of the record and the applicable law, the undersigned recommends that petitioner's application for habeas corpus relief be denied.

1

I.      **Procedural and Factual Background**[1]

In September 2001, separate juries in a single trial convicted defendants Nathan Barr (Barr) and Crystal Jones (Jones) of murdering James Randall.

The Jones jury determined Jones committed the murder while engaged in a robbery (Pen.Code, § 190.2, subd. (a)(17)), personally used a knife in committing the crime (Pen.Code, § 12022, subd. (b)(1)), and was armed with a firearm (Pen.Code, § 12022, subd. (a)(1).)

The Barr jury determined Barr did not commit the murder while engaged in a robbery, but did personally use a firearm (Pen.Code, § 12022.53, subd. (d)).

On October 5, 2001, the trial court sentenced Jones to state prison for life without parole plus one year for the use of a knife.  It sentenced Barr to state prison for a term of 25 years to life for the murder, plus 25 years to life for the use of a firearm, for a total of 50 years to life.

On appeal, Jones asserts the trial court erred by:

1. Denying his motion for new counsel under *People v. Marsden* (1970) 2 Cal.3d 118, 84 Cal.Rptr. 156, 465 P.2d 44 ( *Marsden* motion);

2. Not instructing the jury on his claim-of-right defense;

3. Admitting into evidence against Jones a statement codefendant Barr made to a witness; and

4. Not instructing the jury on accomplice testimony by means of CALJIC Nos. 3.10, 3.11, and 3.18.

Jones also argues these errors amount to cumulative error requiring reversal.  He also asks us to conduct an in camera review of a witness's medical records to determine if the trial court, upon reviewing the same records, abused its discretion by concluding the records contained no discoverable information.

---

[1]  The following summary is drawn from the March 19, 2003 opinion by the California Court of Appeal for the Third Appellate District (hereinafter Opinion), at pp. 1-5, filed in this court on December 21, 2005.  This court presumes that the state court's findings of fact are correct unless petitioner rebuts that presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).  Petitioner has not overcome the presumption with respect to the underlying events. The court will therefore rely on the state court's recitation of the facts.

2

On appeal, Barr asserts the trial court erred by:

1. Not instructing the jury on accomplice testimony by means of CALJIC Nos. 3.11 and 3.18; and

2. Admitting into evidence against Barr a statement codefendant Jones made to a witness.

Like Jones, Barr also claims these errors amount to cumulative error requiring reversal.  He also joins in all of Jones's claims of error.

We affirm.

**FACTS**

Jones and Barr resided in a Sacramento home along with the victim Randall and another man known as BJ, later identified as Benjamin Hence.  Jones was known as "Rollo."  Barr was known as "Mellow."  Barr's girlfriend, Charla Barnes, also stayed at the house.  Barr's best friend, Lawrence "Mo" Cannon, frequented the house.

Prior to February 16, 1999, Barnes had heard Barr complain to Jones and Mo that Barr had given Randall money on more than one occasion to buy crack cocaine for him, but Randall had not produced the drugs.  Barr was mad about this situation.  Jones commented Randall "had to pay."

On February 16, 1999, Barr, Randall, BJ, and an unidentified male were home playing dominoes in the kitchen.  Jones and Barnes were also present.  Barnes noticed Jones rubbing a kitchen knife in the palm of his hand.  She commented to Barr about it.  Barr looked at Jones, who then stopped handling the knife.  Barr told Barnes, "Don't worry about him."

Barr and Barnes left the game and went upstairs to Barr's bedroom.  About two hours later, Barr told Barnes she had to leave the house.  Barnes refused because she believed Barr wanted her to leave so he could bring another woman to the house.  Frustrated, Barr left the room and went downstairs.

Lying in bed, Barnes then heard a sound like somebody was out of breath and in pain.  She heard Randall repeat over and over, "Mellow, don't do this.  Mellow, I love you.  You can have everything you want."  Randall sounded scared, breathless, and in pain.

It was approximately 3:00 a.m.  Barnes went downstairs to see what was happening.  There, she saw Randall bent over, on his knees, head toward the ground.  Blood was on his posterior.  She

3

saw Jones stabbing Randall with a bloody knife.  Randall flinched and moaned.  Twice, Barr yelled at Barnes to go back upstairs.  Barnes saw blood on the carpet then ran upstairs.

Once in the room, Barnes sat down in a corner and cried.  She peeked outside a window and saw BJ running across the front yard but looking back towards the house.  She heard Randall crying and asking God to help him and to forgive him.  She heard Randall asking Jones, "Why are you doing this, Rollo?"

A minute or two later, the noises from downstairs ceased, and all was quiet.  She thought she heard someone coming up the stairs.  She hid in a closet, fearing the person might hurt her.  About 10 minutes passed; no one came upstairs.  Then Mo yelled, "Is anybody up there?"  Eventually, Barnes replied.  Mo assured her he was not going to hurt her.  He came upstairs and asked where the others were.  Barnes did not know.  Mo told her to stay upstairs.  He went downstairs, then returned with Jones and Barr.  Mo suggested they all leave the house together, which they did.  Barnes saw blood on the living room carpet and sofa as they made their way out.

As they walked down an alley, BJ approached them and said he had not told anyone.  Jones complained "the bastard wasn't dead yet."  Mo asked BJ where his gun was, and BJ replied it was back at the house in his bedroom.

The five returned to the house.  Barr escorted Barnes to the upstairs bedroom, then went downstairs.  Moments later, Barnes heard two gunshots coming from the back yard.  Barnes screamed, and eventually cried herself to sleep.

A few days after the killing, Jones met with a friend and fellow drug-user, Paul Davis, and admitted involvement in Randall's death.  He admitted stabbing Randall, but said either Barr or Mo had shot Randall.  He stated afterwards they took drugs and some of Randall's belongings.

Meanwhile, on February 18, 1999, Barr admitted his involvement in the murder to his mother, Theresa Rosemary Brown.  Barr told her after Randall had been stabbed, Randall yelled out for BJ.  When Barr went to cover Randall's mouth to stop him from screaming, Randall bit Barr's finger.  Barr then shot Randall in the head.

Brown saw what looked like a bite mark on Barr's finger.  When Barr was arrested on February 22, 1999, police observed and photographed a cut on Barr's finger.  Barr told police he shot Randall in self-defense.

4

1      Petitioner's judgment of conviction was affirmed by the California Court of Appeal in a

2   reasoned decision dated March 19, 2003.  Opinion at 1-28.  On April 15, 2003, the Court of

3   Appeal filed a modified opinion and denied co-defendant Jones' petition for rehearing.  Resp.'s

4   Lodg. Doc. entitled "April 15, 2003 California Court of Appeal Denial of Co-Appellant's

5   Petition for Rehearing."  On April 23, 2003, petitioner filed a petition for review in the

6   California Supreme Court.  Resp.'s Lodg. Doc. entitled "April 23, 2005, Petitioner's Petition for

7   Review in the California Supreme Court."  That petition was summarily denied by order dated

8   June 11, 2003.  Resp.'s Lodg. Doc. entitled "June 11, 2003, California Supreme Court Denial of

9   the Petition for Review."

10      Petitioner subsequently filed a petition for writ of habeas corpus in the Sacramento

11   County Superior Court, in which he alleged that he did not receive adequate notice of the

12   charges against him and that his trial counsel rendered ineffective assistance.  Resp.'s Lodg.

13   Doc. entitled "March 1, 2004, Sacramento County Superior Court Denial of Petitioner's Petition

14   for Writ of Habeas Corpus" (hereinafter "Superior Court Opinion").  On March 1, 2004, the

15   Superior Court denied that petition in a reasoned decision on the merits.  *Id.*  On April 14, 2004,

16   petitioner filed a petition for writ of habeas corpus in the California Court of Appeal for the

17   Third Appellate District, raising the same claims.  Resp.'s Lodg. Doc. entitled "April 14, 2004

18   Petition for Writ of Habeas Corpus."  That petition was summarily denied by order dated April

19   22, 2004.  Resp.'s Lodg. Doc. entitled "April 22, 2004, Third Appellate District Court of Appeal

20   Denial of Petitioner's Petition for Writ of Habeas Corpus."  On May 27, 2004, petitioner filed a

21   petition for a writ of habeas corpus in the California Supreme Court, in which he raised the same

22   claims.  Resp.'s Lodg. Doc. entitled "May 27, 2004, Petitioner's Petition for Writ of Habeas

23   Corpus in the California Supreme Court."  The Supreme Court summarily denied that petition by

24   order dated April 20, 2004.  Resp.'s Lodg. Doc. entitled "April 20, 2005, California Supreme

25   Court Denial of the Petition for Writ of Habeas Corpus."

26   ////

**II.     Analysis**

**A.  Standards for a Writ of Habeas Corpus**

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents "if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases', or if it 'confronts a set of facts that are materially indistinguishable from a decision'" of the Supreme Court and nevertheless arrives at a different result. *Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Williams*, 529 U.S. at 413.  A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id.* at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002).  Where the state court reaches a

6

1    decision on the merits but provides no reasoning to support its conclusion, a federal

2    habeas court independently reviews the record to determine whether habeas corpus relief is

3    available under section 2254(d).  *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).

4        **B.  Petitioner's Claims**

5            **1.  Admission into Evidence of Statements by Jones**

6            Petitioner's first claim is that the admission into evidence of co-defendant Jones'

7    statements to Paul Davis, in which he implicated petitioner in shooting Randall, violated his

8    Sixth Amendment right to confront the witnesses against him.  Form Pet. at 7; Memorandum of

9    Points and Authorities in Support of Petition for Writ of Habeas Corpus (hereinafter P&A), at 1-

10   2.  Petitioner argues that "because the improperly admitted confession supplied the most

11   convincing evidence of motive and planning, it likely contributed to the jury's verdict of first

12   degree murder."  P&A at 2-2.[2]

13           **a.  State Court Opinion**

14           The California Court of Appeal rejected this claim on direct appeal, reasoning as follows:

15               **1.  Violation of Sixth Amendment right to Confrontation**

16           Jones asserts the trial court erred when it allowed Barr's mother to
         testify as to statements Barr made to her which implicated Jones.
17       Barr asserts the trial court erred when it allowed Davis to testify as
         to statements Jones made to him which implicated Barr.  They
18       claim the statements: (1) were not admissible as statements against
         interest; and (2) admitting the statements deprived them of their
19       constitutional rights to confront witnesses.  Because the
         constitutional claim is dispositive, we address it only, and
20       conclude admitting the statements did not violate the defendants'
         constitutional rights of confrontation.

21           **A. Background information**

22           **1. Barr's statements to Brown used against Jones**

23
         On February 24, 1999, police interviewed Barr's mother, Theresa
24       Brown.  Following Brown's testimony at trial, the prosecution
         played a videotape of her police interview to the jury.  The jury

25
         _____
26       [2]  The P&A contains two pages numbered "2."

also received a transcript of the interview while they viewed the tape.

Brown testified that on February 17, 1999, she saw her son at the home of Barr's estranged wife and he looked afraid. Barr asked her if she had heard anything about a body being found in an alley that day. She had not. That evening, the television news ran a story about a body found in an alley, and broadcast a picture of the victim. Brown, who was watching that program, recognized the victim as Randall, one of her son's roommates.

The following day, Barr went to Brown's house and told her he had shot and killed Randall. He had not acted alone. Barr said someone else had stabbed Randall in the neck, and Randall screamed. Barr said he tried to put his hand over Randall's mouth to keep him from screaming, but Randall bit Barr's finger. Barr said once "this other guy" stabbed Randall in the neck and Randall was going to bleed to death anyway, he put Randall out of his misery and shot him in the head.

Brown asked Barr who the others were and where they were. Barr didn't give names, but he said "one guy was roaming Oak Park somewhere scared to death." He did not know where the other person was located. Brown asked Barr why he did it. Barr said something to the effect his roommate was "fucking him over and trying to get his house from him." Barr told his mother he was sorry, but continued saying he did it. Barr also told Brown when the other person first stabbed Randall, Randall yelled out for BJ.

**2. Jones's statements to Davis used against Barr**

A few days after the murder, Jones told Davis, a fellow drug-user and a parolee, he had something to do with Randall's death. Jones said Barr, Mo and he decided to hurt Randall because he owed them money. Jones asked Barr, "Do you want to do this now or what?" Barr replied, "Let's do it."

Jones stated he stabbed Randall in the neck, then stabbed him two more times. The trio dragged Randall outside, then, once back inside, decided Randall had to be put out of his misery. Jones refused to stab Randall again. Either Barr or Mo shot Randall in the head. Afterwards, they took Randall's drugs and drug proceeds.

Jones sought Davis's advice on what he should do. Davis allowed Jones to clean up but he did not allow Jones to stay with him.

**3. Trial court's rulings on the statements**

Both defense counsel asserted the statements were inadmissible, and even if they were not, any reference to the other defendant

8

should have been redacted.  (*See Bruton v. United States* (1968) 391 U.S. 123 [20 L.Ed.2d 476]; *People v. Aranda* (1965) 63 Cal.2d 518, 47 Cal.Rptr. 353, 407 P.2d 265.)  The trial court disagreed. Citing *Lilly v. Virginia* (1999) 527 U.S. 116 [144 L.Ed.2d 117] and *People v. Duke* (1999) 74 Cal.App.4th 23, 87 Cal.Rptr.2d 547, the court determined the statements were admissible as declarations against interest under Evidence Code section 1230, and also found the statements were made under sufficient particularized guarantees of trustworthiness.

After each statement was presented to the respective juries, the trial court gave cautionary instructions to each jury.  Following the introduction of Jones's statements to Davis before Barr's jury alone, the court stated: "Defendant Jones has a Constitutional right not to be called as a witness.  The fact that Defendant Barr cannot call Defendant Jones as a witness and cross-examine him as to the out-of-court statements testified to by Paul Davis is a factor you may consider in determining how much weight, if any, to give any such statements introduced into evidence against Defendant Barr."

Similarly, following the introduction of Barr's statements to Brown before Jones's jury alone, the court stated: "The fact that Defendant Jones cannot call Defendant Barr as a witness and cross-examine him as to the out-of-court statement testified to by Theresa Brown is a factor you may consider in determining how much weight, if any, to give to any such statements introduced into evidence against Defendant Jones."

The trial court also gave the following instruction to both juries: "Certain witnesses have testified to out-of-court statements made by one of the defendants.  Those statements were introduced against both defendants.  Each Defendant has a right not to be called as a witness.  The fact that one Defendant cannot call the other Defendant as a witness in order to examine him as to the content of the statement is a factor you may consider in determining what weight, if any, you give to such statements."

**B. Analysis**

"The confrontation clause of the Sixth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, provides that '"In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him."'  (*Idaho v. Wright* (1990) 497 U.S. 805, 813, 110 S.Ct. 3139, 111 L.Ed.2d 638.)  The confrontation clause precludes admission of hearsay evidence unless the prosecution demonstrates that the statement possesses adequate indicia of reliability. Reliability may be inferred, without more, if the evidence is admitted under a firmly rooted hearsay exception.  Otherwise, the evidence is presumed unreliable and must be excluded absent a showing of particularized guarantees of trustworthiness such that

adversarial testing would be expected to add little, if anything to the statement's reliability.  (*White v. Illinois* (1992) 502 U.S. 346, 357, 112 S.Ct. 736, 116 L.Ed.2d 848; *Idaho v. Wright, supra*, at pp. 814-816, 818, 820-821; *People v. Eccleston* [ (2001) 89 Cal.App.4th 436, 443]; *People v. Duke* [, *supra*, 74 Cal.App.4th at p.] 29, 87 Cal.Rptr.2d 547.)  Whether '"particularized guarantees of trustworthiness"' exist is determined by examining 'the totality of circumstances that surround the making of the statement and that render the declarant particularly worthy of belief.' (*Idaho v. Wright, supra*, at pp. 819, 820.)  Other corroborating evidence presented at trial may not be used to make a finding of reliability. (*Id.* at pp. 821, 823.)" (*People v. Roberto V.* (2001) 93 Cal.App.4th 1350, 1373-1374, 113 Cal.Rptr.2d 804.)

"If admission of the hearsay statements violated a state statute alone, we apply the standard articulated in *People v. Watson* (1956) 46 Cal.2d 818, 836, 299 P.2d 243, and reverse only if there is a reasonable probability of a result more favorable to the defendant in the absence of the error.  (*People v. Duarte* (2000) 24 Cal.4th 603, 618-619, 101 Cal.Rptr.2d 701, 12 P.3d 1110 [*Watson* standard applicable to state law error in admission of hearsay].)  If, on the other hand, the error violated appellant's confrontation clause rights, we must determine whether the error was harmless beyond a reasonable doubt.  (*Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705]; *Lilly v. Virginia* [, *supra*, 527 U.S. at pp.] 139-140 [applying *Chapman* standard to violations of confrontation clause].... [¶] ...  We independently review a trial court's determination that the statements bore sufficient indicia of reliability.  [Citations.]" (*People v. Roberto V., supra*, 93 Cal.App.4th at p. 1373, 113 Cal.Rptr.2d 804.)

Here, even if the statements were not admissible as statements against interest, they still could have been admitted if they were made with particularized guarantees of trustworthiness.  We will thus focus on that issue.  The high court has declared "accomplices' confessions that inculpate a criminal defendant are not within a firmly rooted exception to the hearsay rule as that concept has been defined in our Confrontation Clause jurisprudence." (*Lilly v. Virginia, supra*, 527 U.S. at p. 134.)  Accordingly, we must presume defendants' statements admitted to inculpate each other were unreliable and inadmissible unless the prosecution demonstrated particularized guarantees of trustworthiness such that adversarial testing would be expected to add little, if anything, to the statement's reliability.

Courts have "considerable leeway" in their consideration of appropriate factors of trustworthiness.  (*Idaho v. Wright, supra*, 497 U.S. at p. 822.)  We have, however, received some recent guidance regarding how to determine whether a statement was made under particularized guarantees of trustworthiness.  Toward one end of the spectrum, *Lilly v. Virginia, supra*, informs us "[i]t is

highly unlikely that the presumptive unreliability that attaches to accomplices' confessions that shift or spread blame can be effectively rebutted when ... the government is involved in the statements' production, and when the statements describe past events and have not been subjected to adversarial testing." (*Lilly v. Virginia, supra*, 527 U.S. at p. 137.) The statement at [sic] in that case was given by a non-testifying defendant while he was in custody, while he was under the influence of alcohol, and in response to officers' leading questions.

Lilly also informs us we may not determine a hearsay statement is sufficiently trustworthy based on corroborating evidence. "'[H]earsay evidence used to convict a defendant must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial.'" (*Lilly v. Virginia, supra*, 527 U.S. at p. 138.) Also, the fact a person makes "'a broadly self-inculpatory confession does not make more credible the confession's non-self-inculpatory parts.'" (*Id.* at p. 139.)

Towards the other end of the spectrum lies *People v. Duke, supra*. There, two defendants were convicted of murder. The jury heard testimony by a friend of one of the defendants, relaying comments one of the defendants made to him the morning after the murder inculpating both defendants. The Court of Appeal affirmed the trial court's conclusion the residual trustworthiness test had been met. The defendant-declarant voluntarily and spontaneously made his comments to the friend within hours of committing the crime. He had no motive to lie to his friend, and he did not attempt to shift blame or deny his involvement in the crimes. He was not yet even a suspect. (*People v. Duke, supra*, 74 Cal.App.4th at pp. 31-32, 87 Cal.Rptr.2d 547.)

Moreover, the Court of Appeal distinguished *Lilly* in that the *Duke* jurors received both a jury "admonition" and a jury instruction informing jurors they could consider the fact the non-declarant-defendant was not able to cross-examine the declarant-defendant when determining how much weight, if any, they would give to the out-of-court statements. (*Id.* at pp. 28-29, 31-32, 87 Cal.Rptr.2d 547.)

Regarding Barr's statement to Brown, we conclude the circumstances surrounding Barr's statements to his mother closely resemble those found controlling in Duke. The statements were made within a day or two of the murder. Barr appeared at his estranged wife's home on his own volition. He spoke spontaneously and voluntarily, without coercion or leading by his mother. When Barr spoke with his mother the second time, he spoke in the privacy and safety of his mother's home. The two days of statements were consistent with each other. There was no evidence he made the statements while under the influence of alcohol or drugs. There was no indication Barr believed law

11

1    enforcement considered him to be a suspect.

2    Although Barr stated he was not alone in acting, he did not try to
     shift responsibility for the shooting by name to anyone else. He
3    repeated he was the person who shot Randall. He had no apparent
     motive to lie to his mother.
4
     Similarly, regarding Jones's statements to Davis, we conclude the
5    circumstances surrounding those statements also closely resemble
     those found controlling in Duke. The statements were made within
6    days of the murder. Jones made them to a friend with whom he
     had been involved with drugs. Davis himself was on parole and
7    would thus not go to law enforcement with the statement if it
     inculpated him in a violation of parole. Jones sought advice at a
8    time when he was not under arrest or believed he was being
     considered as a suspect. He did not shift responsibility for
9    stabbing Randall to anyone else. Jones had no motive to lie.
     There was no evidence Jones was under the influence of drugs or
10   alcohol when he met Davis. Finally, Jones made the statement
     voluntarily to a friend; it was not the result of an investigation or
11   leading questions.

12   Moreover, both juries received the admonitions and the instruction
     allowing them to consider freely the defendants' inability to
13   cross-examine each other regarding their out-of-court statements.
     As a result, the trial court committed no error admitting the
14   defendants' statements to Davis and Brown upon concluding they
     were made under particularized guarantees of trustworthiness.
15
     Even were we to conclude admitting the statements violated each
16   defendant's constitutional right to confront witnesses, we would
     conclude the error was harmless beyond a reasonable doubt.
17   Brown and Davis's testimony added little to the incriminatory
     evidence otherwise admitted against each defendant.
18
     Barr confessed he shot and killed Randall. He stated he did it
19   because he believed Randall was trying to get his house from him.
     He repeatedly told his mother he committed the crime.
20
     Similarly, Jones confessed to stabbing Randall once in the neck
21   and twice in the torso. He said he decided to do it because Randall
     owed him money. He admitted he took drugs and other belongings
22   from Randall after the murder. Moreover, Barnes saw Jones stab
     Randall.
23
     Relying on this evidence, we conclude any error by the trial court
24   admitting each defendant's out-of-court statements into evidence
     against each other was harmless beyond a reasonable doubt.
25

26   Opinion at 13-22.

1
## b. **Applicable Law**

2       The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal

3 prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against

4 him. . . ." U.S. CONST. amend. VI.  This right, extended to the States by the Fourteenth

5 Amendment, includes the right to cross-examine witnesses.  *Cruz v. New York*, 481 U.S. 186,

6 189 (1987) (citing *Pointer v. Texas*, 380 U.S. 400, 404 (1965)).  However, an unavailable

7 witness' out-of-court statement may be admitted against a criminal defendant and not run afoul

8 of the Confrontation Clause so long as it bears adequate indicia of reliability – i.e., falls within a

9 "firmly rooted hearsay exception" or otherwise bears "particularized guarantees of

10 trustworthiness" such that adversarial testing would be expected to add little, if anything, to the

11 statement's reliability.  *Ohio v. Roberts*, 448 U.S. 56, 66 (1980); *Lilly*, 527 U.S. at 124-25.

12 Whether a statement bears "particularized guarantees of trustworthiness" must be shown from

13 the totality of the circumstances surrounding the making of the statement, not from the trial

14 evidence as a whole.  *Idaho v. Wright*, 497 U.S. 805, 819 (1990).[3]

15       In *Bruton v. United States*, 391 U.S. 123 (1968), the United States Supreme Court held

16 that a defendant is deprived of his Sixth Amendment right of confrontation when a facially

17 incriminating confession of a non-testifying co-defendant is introduced at their joint trial, even if

18 the jury is instructed to consider the confession only against the co-defendant.  391 U.S. at 135.

19

20       [3]  In 2004, the United States Supreme Court held that the Confrontation Clause bars the state from introducing into evidence out-of-court statements which are testimonial in nature unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the

21 witness, regardless of whether such statements are deemed reliable.  *Crawford v. Washington*, 541 U.S. 36 (2004).  However, for purposes of the AEDPA, this court must look to federal law

22 as it existed at the time of the state court decision in determining whether the petition should be granted.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Clark v. Murphy*, 331 F.3d 1062, 1069

23 (9th Cir. 2003).  The holding in *Crawford* is not retroactive to cases on collateral review. *Whorton v. Bockting*, 549 U.S. 406, 421 (2007).  Therefore, the decision in *Crawford* does not

24 apply to this case because it was decided after petitioner's trial and appeal.  *Winzer v. Hall*, 494 F.3d 1192, 1194 (9th Cir. 2007).  *See also Bolton v. Knowles*, No. 05-15966, 2007 WL 793200,

25 *1 (9th Cir. Mar. 15, 2007) (concluding that where habeas petitioner's direct review became final prior to the decision in *Crawford*, his Confrontation Clause claim was governed by the

26 standards set forth in *Ohio v. Roberts*).

"Under Bruton and its progeny 'the admission of a statement made by a non-testifying codefendant violates the Confrontation Clause when that statement facially, expressly, or powerfully implicates the defendant.'" *United States v. Hernandez-Orellana*, 539 F.3d 994, 1001 (9th Cir. 2008) (quoting *United States v. Mitchell*, 502 F.3d 931, 965 (9th Cir. 2007)).

Confrontation Clause violations are subject to harmless error analysis. *Whelchel v. Washington*, 232 F.3d 1197, 1205-06 (9th Cir. 2000). The United States Supreme Court has specifically held that *Bruton* error is subject to harmless error analysis. *Lilly*, 527 U.S. at 139-40; *Harrington v. California*, 395 U.S. 250, 253-54 (1969). "In the context of habeas petitions, the standard of review is whether a given error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Christian v. Rhode*, 41 F.3d 461, 468 (9th Cir. 1994) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). Factors to be considered when assessing the harmlessness of a Confrontation Clause violation include the importance of the testimony, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony, the extent of cross-examination permitted, and the overall strength of the prosecution's case. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).[4]

### c. **Analysis**

The California Court of Appeal determined that even if the admission into evidence of Jones's statements to Davis violated petitioner's Sixth Amendment right to confrontation, any error was harmless. This court agrees, for the following reasons.

Davis testified that Jones told him petitioner, Jones and Mo had to hurt the victim because he owed them money. Reporter's Transcript on Appeal (RT) at 270-72. Jones stabbed the victim in the neck and then stabbed him several more times in the chest and stomach. *Id.* at 273-74, 277. After the stabbing, "they" put the victim in the back yard. *Id.* at 278. It was

---

[4] Although *Van Arsdall* involved a direct appeal and not a habeas action, "there is nothing in the opinion or logic of *Van Arsdall* that limits the use of these factors to direct review." *Whelchel*, 232 F.3d at 1206.

1    determined that someone needed to shoot the victim to "take him out of his misery," so either

2    Mo or petitioner shot him.  *Id.* at 278-80.  Before the stabbing took place, Jones asked petitioner

3    whether "you want to do this now or what" and petitioner responded, "Let's do it."  *Id.* at 281.

4           Petitioner's mother, Theresa Rosemary Brown, testified that petitioner told her "he did

5    it," but that he didn't act alone.  *Id.* at 328.  He also told her his roommate stabbed the victim.

6    *Id.* at 332.  Ms. Brown conceded she had previously informed the police that petitioner told her

7    he shot the victim in the head in order to put him out of his misery.  *Id.* at 331.  Ms. Brown asked

8    petitioner several times "why he did this" and he said "something like" "he did it because . . . the

9    roommate, was stealing from him."  *Id.* at 341-42.  Ms. Brown told police that petitioner stated

10   he put his hand over the victim's mouth to keep him from screaming.  *Id.* at 330.  The victim bit

11   him on the finger when he did this.  *Id.*

12          Charla Barnes, petitioner's former girlfriend, testified that before the murder she heard

13   petitioner complain that the victim owed him some money.  *Id.* at 92, 96.  As described by the

14   California Court of Appeal, she testified she saw Jones stabbing the victim while petitioner

15   looked on, and later heard two gunshots.  Opinion at 4-5.

16          In light of the testimony described above, the California Court of Appeal's conclusion

17   that the erroneous admission of Davis's testimony was harmless is neither contrary to, nor an

18   unreasonable application of, Supreme Court harmless error jurisprudence.  *See Fry v. Pliler*, 551

19   U.S. 112, 119 (2007) (in order to grant habeas relief where a state court has determined that a

20   constitutional error was harmless, a reviewing court must determine that the state court's

21   decision was "contrary to" or an "unreasonable application" of Supreme Court harmless error

22   precedent, and that the petitioner suffered prejudice under *Brecht* from the constitutional error);

23   *Mitchell v. Esparza*, 540 U.S. 12, 17-18 (2003) (same); *Inthavong v. LaMarque*, 420 F.3d 1055,

24   1059 (9th Cir. 2005) (same).  The testimony of Theresa Brown and Charla Barnes established

25   that the victim was killed because he owed petitioner money or was stealing from him, that Jones

26   stabbed the victim, that petitioner was present at the murder, and that petitioner shot the victim in

1   the head in order to put him out of his misery.  In addition, petitioner informed the police that he

2   shot the victim, although he stated he acted in self-defense.  Opinion at 5.  All of this provided

3   evidence of motive and planning, as well as petitioner's personal involvement in the crime, and

4   was more than sufficient to support petitioner's conviction of first degree murder.  Davis's

5   testimony, on the other hand, was inconclusive as to the identity of the person who shot the

6   victim, and was otherwise cumulative of the testimony of Barnes and Theresa Brown.  As stated

7   by the California Court of Appeal, any error in allowing Davis to testify about Jones's statements

8   was harmless because his testimony "added little" to the incriminatory evidence otherwise

9   admitted against petitioner."  Opinion at 21.  Put another way, the other evidence of petitioner's

10  guilt was substantial, whereas the prejudice to petitioner resulting from Jones's admission was

11  minimal.  *See Herd v. Kincheloe*, 800 F.2d 1526, 1529 (9th Cir. 1986) (*Bruton* violations do not

12  require reversal "if the other evidence of guilt was overwhelming and the prejudice to the

13  defendant from his co-defendant's admission slight by comparison").  Accordingly, petitioner is

14  not entitled to relief on this claim.

15              **2.     Constructive Amendment of the Information/ Insufficient Notice of
                          the Charges**

16

17          Petitioner's next two claims, which are entitled "Constructive Amendment of the

18  Information" and "Insufficient Notices of the Charges," involve the same factual background.

19  *See* Pet. at 8-9.  Those facts are as follows.  The original complaint against petitioner, filed

20  February 24, 1999, charged petitioner with murder in that he "did willfully, unlawfully, and with

21  malice aforethought murder . . . a human being."  Clerk's Transcript on Appeal (CT) at 38.[5]  On

22  September 21, 1999, an amended complaint was filed which further alleged, as a special

23  circumstance within the meaning of Cal. Pen. Code § 190.2(a)(17), that "the murder . . . was

24  committed by [petitioner] while [petitioner was] engaged in the commission of the crime of

25  _____

26          [5] Petitioner asserts that these allegations constitute a charge of second degree murder
    under California law.  (P&A at 2-3.)

                                                    16

1   robbery." *Id.* at 40.[6]   The prosecutor argued during his opening statement that petitioner was

2   guilty of murder during the commission of a robbery.   ART at 32-33.   At the close of the

3   evidentiary portion of the trial, the trial court gave jury instructions on first degree premeditated

4   murder, as well as instructions on felony murder and second degree murder.   RT at 920-22.   The

5   jury found petitioner guilty of first degree murder, but acquitted him of murder in the

6   commission of a robbery.   *Id.* at 1081-82.

7          Petitioner claims, in essence, that he was not given sufficient notice he was being charged

8   with first degree premeditated murder and therefore did not structure his defense to counter that

9   charge.   He argues that the charging documents and the evidence presented by the prosecutor

10  involved only second degree murder or felony murder.   He also argues that the charges against

11  him were constructively amended when the trial court gave jury instructions on first degree

12  premeditated murder.   Petitioner explains, "by its express terms, the Information charged

13  petitioner only with second degree malice murder, then that charge was changed by the trial

14  court's instructions to allow a conviction of first degree murder with premeditation and

15  deliberation, a completely different crime under California law."   P&A at 3.   Petitioner claims

16  that he was misled as to the true nature of the charges against him by the presentation of the

17  prosecution's case which involved a theory of felony murder, that he was surprised by the jury

18  instructions on first degree premeditated murder, and that he was unable to present an adequate

19  defense.   He argues,

20              The facts of petitioner's case . . . show that at no time during
                pretrial proceedings, opening statements, or the taking of the
21              testimony was the concept of deliberate and premeditated murder
                raised.   On the contrary, the prosecutor insisted that his theory of
22              the case was solely that of felony murder, which is what he said
                the evidence would show, and what he would ask the jury to find
23              in its verdict.   In line with his arguments, the prosecutor devoted
                his entire presentation of evidence to developing proof of felony
24              murder.   As a result of these representations by the prosecutor,

25  ─────────────────

26          [6] Subsequently, an Information and a Consolidated Information were filed; however, the
    charging allegations remained the same as in the amended complaint.   *Id.* at 48, 142.

> petitioner's entire defense was directed at defeating the allegations
> of murder committed during commission of a robbery, a defense
> that proved successful when the jury acquitted petitioner of the
> robbery that stood as the basis of the felony murder theory.
>
> Despite the facts stated above, after the close of the evidentiary
> portion of the trial, the trial court instructed the jury on deliberate
> and premeditated murder.  The prosecution then argued that theory
> in his closing argument, and the jury convicted petitioner of
> premeditated murder.

*Id.* at 4.  Petitioner argues that the prosecutor "ambushed the defense with a new theory of

culpability after the evidence was already in and both sides had rested."  *Id.* at 5.  For these

reasons, petitioner claims that his conviction for first degree premeditated murder violated his

federal constitutional rights.  He also argues that his conviction should be reversed without a

showing of prejudice.  *Id.*

### a.  <u>Superior Court Opinion</u>

The California Superior Court rejected these claims, reasoning as follows:

> Petitioner's first and second claims are interrelated.  Essentially, it
> is one claim that although the information charged him with
> "malice aforethought murder," the prosecutor at trial argued only a
> robbery-murder theory, and since the Penal Code § 190.2(1)(17)
> robbery-murder special circumstance was found not true by the
> jury, that means that the jury necessarily found him guilty of the
> murder solely on a malice aforethought murder, which somehow
> violated petitioner's rights.  It appears that petitioner's argument is
> that because the prosecutor, at trial, relied solely on a felony-
> murder theory, and not a malice aforethought murder theory, to
> have instructed the jury on malice aforethought murder was
> surprise to the defense and violated his due process rights to proper
> notice of the charges.
>
> The claim is barred from habeas corpus review, because it could
> have been but was not raised on appeal (*In re Dixon* (1953) 41
> Cal.2d 756, *reaffirmed in In re Harris* (1993) 5 Cal.4th 813, 829.)
> The only exceptions to this procedural bar are: (1) if the claim is
> based on constitutional error that is both clear and fundamental,
> and that strikes at the heart of the trial process; (2) if the claim is
> now couched in ineffective assistance of counsel terms; (3) if the
> court lacked fundamental jurisdiction over the petitioner or the
> subject matter; (4) if the court acted in excess of its jurisdiction
> and the issue is strictly a legal one not requiring a redetermination
> of the facts underlying the claim; or (5) there has been a change in

the law affecting the petitioner (*Harris, supra*, 5 Cal.4th 813, 834 fn. 8, 836, 840-841; *In re Antazo* (1970) 3 Cal.3d 100 108 [exceptions to *Dixon* rule are same as those to *Waltreus* rule]). Petitioner does not show that this claim qualifies for any of these exceptions.

Regardless, the claim fails on its merits, in any event.

Specifically, the argument appears to be grounded in *Sheppard v. Rees* (9th Cir. 1990) 909 F.2d 1234), which presented the opposite situation from the one at bar.  In *Sheppard*, only malice aforethought murder had been charged and pursued at trial.  Nor had the *Sheppard* defendant been charged with any underlying felony.  It was only at the time of determining the jury instructions that the prosecutor suddenly requested a felony-murder jury instruction, which was then given.  The Ninth Circuit held that this violated the defendant's constitutional right to due process and notice of the charges.

After *Sheppard*, the California Supreme Court acknowledged that due process does require sufficient notice of a felony-murder theory on a murder charge, when only malice-aforethought murder is charged in the information (*People v. Kipp* (2001) 26 Cal.4th 1100).  However, *Sheppard* is strictly limited to when the only mention of felony-murder is made just at the time of jury instructions, afterwhich the jury immediately retires for deliberation.  The courts that have considered the issue since *Sheppard*, including the Ninth Circuit, have all agreed that the *Sheppard* rule does not apply if the defendant is given sufficient notice of the felony-murder theory, such as through the allegation charging murder itself, testimony at the preliminary hearing, during voir dire or opening statements at trial, or a mid-trial request for a felony-murder instruction followed by further testimony and cross-examination of witnesses (*see Stephens v. Borg* (9th Dir. 1994) 59 F.3d 932; *Morrison v. Estelle* (9th Cir. 1992) 981 F.2d 425; *Usher v. Gomez* (N.D. Cal. 1991) 775 F.Supp. 1308, 1312-1315; *People v. Johnson* (1991) 233 Cal.App.3d 425, 453-457; *see also People v. Memro* (1995) 11 Cal.4th 786 [defense counsel may move to reopen if surprised by prosecutor's jury instruction request]).

In the case at bar, petitioner was initially charged with malice aforethought murder.  The information was not amended at any time during the proceeding to change that language.  Thus, petitioner was always on notice, from the moment the murder allegation was charged, that he was subject to prosecution on a theory of malice aforethought.  That the prosecutor's main focus at trial may have been limited to a robbery-murder theory did not violate any due process right of the defendant.  Nor is petitioner correct in his assertion that he was charged only with second degree malice aforethought murder.  The murder charge was an

1    open one, without any specification to degree.  As such, it included
     first degree murder (*see generally People v. Watkins* (1987) 195
2    Cal.App.3d 258).

3    Nor is petitioner correct to assume that the jury necessarily found
     him not guilty of robbery-murder, and had relied solely on a
4    malice aforethought murder theory in convicting him of first
     degree murder.  It is true that the jury did not find true the robbery-
5    murder special circumstance with regard to petitioner.  However,
     that does not mean that the jury did not find petitioner guilty of
6    murder on a robbery-murder theory.  In this case, the court
     instructed the jury, on the robbery-murder special circumstance,
7    with CALJIC No. 8.81.17, on the independent felonious purpose
     finding required for the robbery-murder special circumstance.  It is
8    possible that the jury rejected that, rather than petitioner's
     participation in a robbery-murder.  In other words, it was possible
9    for the jury to have rejected the robbery-murder special
     circumstance without rejecting robbery-murder as a theory of
10   liability for first degree murder.

11   The claim, therefore, fails on the merits, requiring its denial even if
     it were not barred from habeas review by *Dixon* (*In re Bower*
12   (1985) 38 Cal.3d 865).

13   Superior Court Opinion at 1-3.

14                         **b.  Procedural Default**

15       Respondent argues that the California Superior Court's citation to *In re Dixon* constitutes

16   a procedural bar which precludes this court from addressing the merits of petitioner's claims of

17   constructive amendment and inadequate notice.  Answer at 13, 15.  Respondent also urges this

18   court to deny petitioner's claim on the merits.  *Id.* at 13-14, 15.

19       State courts may decline to review a claim based on a procedural default.  *Wainwright v.*

20   *Sykes*, 433 U.S. 72, 81-82 (1977).  As a general rule, a federal habeas court "'will not review a

21   question of federal law decided by a state court if the decision of that court rests on a state law

22   ground that is independent of the federal question and adequate to support the judgment.'"

23   *Calderon v. United States District Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996) (quoting

24   *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).  The state rule is only "adequate" if it is

25   "firmly established and regularly followed."  *Id.*  (quoting *Ford v. Georgia*, 498 U.S. 411, 424

26   (1991)).  *See also Bennett v. Mueller*, 322 F.3d 573, 583 (9th Cir. 2003) ("[t]o be deemed

1  adequate, the state law ground for decision must be well-established and consistently applied.")

2  The state rule must also be "independent" in that it is not "interwoven with the federal law."

3  *Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000) (quoting *Michigan v. Long*, 463 U.S.

4  1032, 1040-41 (1983)).  Even if the state rule is independent and adequate, the claims may be

5  heard if the petitioner can show:  (1) cause for the default and actual prejudice as a result of the

6  alleged violation of federal law; or (2) that failure to consider the claims will result in a

7  fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 749-50.  Procedural default is an

8  affirmative defense, and the state has the burden of showing that the default constitutes an

9  adequate and independent ground.  *Insyxiengmay v. Morgan*, 403 F.3d 657, 665-66 (9th Cir.

10  2005); *Bennett*, 322 F.3d at 585-86.

11       *In re Dixon* "bars a habeas corpus petitioner from raising a claim that was not, but should

12  have been, raised on appeal."  *In re Seaton*, 34 Cal.4th 193, 199 (2004).  The California Supreme

13  Court's citation to *In re Dixon* does not constitute an adequate and independent procedural rule.

14  The *Dixon* bar may be "independent" as applied in this case.  *See Bennett*, 322 F.3d  at 581-83.

15  However, respondent has not met his burden of demonstrating that the *Dixon* bar is "adequate,"

16  having been regularly and consistently applied in habeas actions post-1993.[7]  *Id.* at 583-86.  *See*

17  *also Wyrick v. Newland*, No. C 03-5623 JSW, 2007 WL 760529, at *5-6 (N.D. Cal. Mar. 9,

18  2007) (rejecting argument that citation to *Dixon* constituted adequate procedural bar and finding

19  that the state had failed to meet its burden of proof under *Bennett* of establishing the adequacy of

20  the procedural bar to preclude federal review).  Accordingly, the California Supreme Court's

21  citation to *In re Dixon* does not constitute a procedural bar to federal review of petitioner's

22  claims.  In any event, a reviewing court need not invariably resolve the question of procedural

23  default prior to ruling on the merits of a claim.  *Lambrix v. Singletary*, 520 U.S. 518, 524-25

24

25       [7]  The Ninth Circuit has held that the *Dixon* procedural bar was not firmly established and
   consistently applied at least prior to 1993 and therefore cannot constitute an independent and
26  adequate state procedural bar prior to that time.  *See Cooper v. Calderon*, 255 F.3d 1104, 1111
   (9th Cir. 2001); *Fields v. Calderon*, 125 F.3d 757, 765 (9th Cir. 1997).

21

1    (1997); *see also Busby v. Dretke*, 359 F.3d 708, 720 (5th Cir. 2004).  Under the circumstances

2    presented here, this court finds that petitioner's claims can be resolved more easily by addressing

3    them on the merits.  Accordingly, this court will assume that petitioner's claims are not defaulted

4    and will address them on the merits.

5                             **c. <u>Analysis</u>**

6        A constructive amendment constitutes a violation of the Fifth Amendment right to

7    presentment or indictment by a grand jury.  U.S. CONST. amend. V; *Gautt v. Lewis*, 489 F.3d

8    993, 1003 n.10 (9th Cir. 2007).  However, "this Fifth Amendment right has not been

9    incorporated into the Fourteenth Amendment so as to apply against the states."  *Gautt*, 489 F.3d

10   at 1003 n.10.  *See also Branzburg v. Hayes*, 408 U.S. 665, 688 n.25 (1972) (*citing Hurtado v.*

11   *California*, 110 U.S. 516, 534-35 (1884)); *Williams v. Haviland*, 467 F.3d 527, 531-32 (6th Cir.

12   2006) (holding that Apprendi did not change the "Supreme Court's repeated assertion that the

13   Grand Jury Clause of the Fifth Amendment does not apply to the states").  Accordingly,

14   petitioner's claim entitled "Constructive Amendment of the Information in Violation of the Fifth

15   and Fourteenth Amendments to the United States Constitution" lacks merit and should be

16   denied.  Rather, the court will construe petitioner's arguments as a claim that his due process

17   right to fair notice of the charges against him was violated when the original charges of second

18   degree murder and/or felony-murder were changed at the jury instruction phase to a charge of

19   premeditated first degree murder, thereby preventing him from presenting an adequate defense to

20   the amended charge.

21        The Sixth Amendment guarantees a criminal defendant the fundamental right to be

22   clearly informed of the nature and cause of the charges against him in order to permit adequate

23   preparation of a defense.  *Cole v. State of Ark.*, 333 U.S. 196, 201 (1948).  *See also Strickland v.*

24   *Washington*, 466 U.S. 668, 685 (1984) ("a fair trial is one in which evidence subject to

25   adversarial testing is presented to an impartial tribunal for resolution of issues defined in

26   advance of the proceeding"); *Jackson v. Virginia*, 443 U.S. 307, 314 (1979) ("[A] conviction

upon a charge not made . . . constitutes a denial of due process"); *Lincoln v. Sunn*, 807 F.2d 805,

812 (9th Cir. 1987) (the Sixth Amendment guarantees a criminal defendant a fundamental right

"to be informed of the nature and the cause of the accusation").  A critical consideration "is

whether the introduction of a new theory changes the offense originally charged . . . or so alters

the case that the defendant has not had a fair opportunity to defend."  *Sunn*, 807 F.2d at 813.  The

notice provision of the Sixth Amendment is incorporated within the Due Process Clause of the

Fourteenth Amendment and is applicable to the states.  *Gautt*, 489 F.3d at 1003.

    In this case, petitioner was not deprived of a fair opportunity to defend, nor did he suffer

prejudice from any differences in pleading and proof.  The California Superior Court found that

the murder charge contained in all of the charging documents was "an open one," which

included first degree murder with malice aforethought.  Superior Court Opinion at 2, 3.  This

finding is based on an interpretation of state law and may not be overturned in this federal

habeas corpus proceeding.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal writ is

not available for alleged error in the interpretation or application of state law); *Aponte v. Gomez*,

993 F.2d 705, 707 (9th Cir. 1993) (federal courts are "bound by a state court's construction of its

own penal statutes"); *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1399 (9th Cir. 1989) (a federal

habeas court must defer to the state court's construction of its own penal code unless its

interpretation is "untenable or amounts to a subterfuge to avoid federal review of a constitutional

violation").  Thus, the crime specified in the information and the crime for which petitioner was

convicted are the same offense.  Petitioner's argument that the initial charges against him

involved only second degree murder, but were subsequently changed to first degree murder is

unavailing.

    Further, there is no evidence petitioner's trial counsel failed to understand the nature of

the charges against petitioner.  Neither the prosecutor nor either defense counsel objected to the

jury instruction on premeditation and deliberation.  This indicates the prosecutor had not elected

to proceed solely on a theory of felony-murder and that defense counsel understood the

1   prosecutor was relying on more than one theory to convict petitioner of first degree murder.

2   Indeed, during his closing argument petitioner's trial counsel informed the jury that:

3            the prosecutor's theory for first degree murder in this case, and
         that's the crime charged, that's what he is trying to prove, first
4            degree murder with the special circumstance, you'll notice that
         he's got two theories: The first one is felony murder . . . .  The
5            second theory is premeditated murder . . . .

6   RT at 837-38.  Similarly, trial counsel for co-defendant Jones informed the jury that the

7   prosecutor had "advanced two theories:  One, that it was an intentional, premeditated murder,

8   and two, that it was a felony murder, a killing during the commission of a robbery."  *Id.* at 1008.

9   Petitioner's argument that the defense was surprised by the inclusion of a jury instruction on

10  premeditation and deliberation is not supported by the record.  The fact that petitioner may have

11  chosen to structure his defense to counter a theory of felony-murder does not mean he had

12  insufficient notice of the charges against him.  Because the charging documents notified

13  petitioner that he was being charged with premeditated murder, he had a "fair opportunity to

14  defend" against that charge, whether he chose to do so or not.  *Sunn*, 807 F.2d at 813.

15        Petitioner cites *Sheppard v. Rees*, 909 F. 2d 1234 (9th Cir. 1989), in support of his claim

16  in this regard.  In *Sheppard*, the Ninth Circuit held that defendant did not receive adequate notice

17  of the charges against him where: (1) neither felony-murder nor the underlying charge of robbery

18  was listed in the information; (2) the prosecutor did not raise the possibility of pursuing a

19  felony-murder theory either before or during trial; (3) the day after both attorneys submitted and

20  argued their jury instructions, the prosecutor for the first time requested a felony-murder

21  instruction, which was given over the strenuous objection of Sheppard's counsel; (4) the jury

22  convicted Sheppard of first degree murder without specifying what legal theory supported the

23  verdict; and (5) on appeal, the state conceded that the prosecutor's conduct "affirmatively misled

24  the defendant, denying him an effective opportunity to prepare a defense."  909 F.2d at 1236.

25  The *Sheppard* decision has been characterized as a "narrow ruling" which has been limited

26  strictly to its facts.  See *Morrison v. Estelle*, 981 F.2d 425, 428 (9th Cir. 1992).  In this case,

24

1    notwithstanding the prosecutor's emphasis on a felony-murder theory of liability, there is no

2    evidence in the record that the prosecutor, the court, or anyone else deliberately misled petitioner

3    as to the nature of the charges against him.  For the reasons described by the California Superior

4    Court, the narrow ruling of *Sheppard* is factually distinguishable and does not provide support

5    for petitioner's arguments.

6          This is not a case where an element of the crime was omitted (*Russell v. United States*,

7    369 U.S. 749, 763-64 (1962)), where the government conceded that it deliberately misled the

8    defendant (*Sheppard*), where an appellate court affirmed a conviction on a different theory than

9    the one presented to the jury (*United States v. McCormick*, 500 U.S. 257 (1991)), or where

10   petitioner was convicted of a different crime than the one charged in the indictment (*United

11   States v. Tsihnahijinnie*, 112 F.3d 988, 992 (9th Cir. 1997)).  Rather, because all of the charging

12   documents alleged that petitioner committed murder with malice aforethought, "petitioner was

13   always on notice, from the moment the murder allegation was charged," that he was subject to

14   prosecution for first degree premeditated murder.  Superior Court Opinion at 2.  The trial

15   testimony supported this theory of liability.  Specifically, the prosecutor presented evidence that

16   petitioner and his cohorts decided to kill the victim and that he was stabbed and shot while all of

17   the participants looked on.  In light of this, the trial court's jury instructions on premeditated

18   murder did not amend the charge against petitioner so much as clarify one possible theory of

19   liability to support the "open" murder charged against him.

20         The state court opinion rejecting petitioner's claim in this regard is a reasonable

21   construction of the evidence in this case and is not contrary to or an objectively unreasonable

22   application of United States Supreme Court authority.  *See Woodford v. Visciotti*, 537 U.S. 19,

23   25 (2002).  *See also* 28 U.S.C. § 2254(d)(1).  Accordingly, petitioner is not entitled to habeas

24   relief.

25   ////

26   ////

### 3. <u>Ineffective Assistance of Counsel</u>

Petitioner claims that his trial counsel rendered ineffective assistance when he failed to object to the jury instruction on premeditation and deliberation, and when he failed to object to the imposition of a restitution fine at the sentencing proceedings.  P&A at 7-13.  After setting forth the applicable legal principles, the court will evaluate these claims in turn below.

### a. <u>Legal Standards</u>

The Sixth Amendment guarantees the effective assistance of counsel.  The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of counsel, a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  *See, Strickland*, 466 U.S. at  687-88.  After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.  *Id*. at 690; *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).

Second, a petitioner must establish that he was prejudiced by counsel's deficient performance.  *Strickland*, 466 U.S. at 693-94.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  *Id.  See also Williams*, 529 U.S. at 391-92; *Laboa v. Calderon*, 224 F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."  *Strickland*, 466 U.S. at 697.  In assessing an ineffective assistance of counsel claim "[t]here is a strong presumption that counsel's performance falls within the 'wide range of professional assistance.'"  *Kimmelman*

1   *v. Morrison*, 477 U.S. 365, 381 (1986) (quoting *Strickland*, 466 U.S. at 689).  There is in

2   addition a strong presumption that counsel "exercised acceptable professional judgment in all

3   significant decisions made."  *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990) (citing

4   *Strickland*, 466 U.S. at 689).

5                         **b.  Failure to Object to Jury Instruction**

6          Petitioner claims that his trial counsel rendered ineffective assistance by failing to object

7   to "constructive amendment of the information without notice."  P&A at 5.  Specifically,

8   petitioner objects to counsel's failure to challenge the jury instruction on premeditation and

9   deliberation.  He argues that he suffered prejudice from counsel's inaction because the trial court

10  would have "been compelled by clearly established law to grant the objection and remove the

11  premeditation and deliberation instructions from the jury charge."  *Id.* at 6.  Petitioner further

12  argues that because the jury did not find him guilty of first degree murder under a felony murder

13  theory, without the jury instruction on premeditated murder the jury would have had no

14  alternative but to acquit him of first degree murder altogether.  *Id.*  Petitioner also contends that

15  he suffered prejudice because counsel's failure to raise any objection to the jury instruction in

16  the trial court precluded him from raising the issue on appeal.  He argues, "counsel's omission

17  also affected the outcome of the appellate proceedings because, if not for counsel's waiver of the

18  errors, petitioner's conviction would have been reversed on appeal."  *Id.* at 7.

19         The California Superior Court rejected petitioner's claims in this regard, reasoning as

20  follows:

21              Petitioner next claims that he was rendered ineffective assistance
                of trial defense counsel, because his counsel failed to object to the
22              premeditation and deliberation instructions.  Because the claim is
                couched in ineffective assistance of counsel terms, it appears not to
23              be barred from habeas corpus review under *Dixon, supra*.
                Nevertheless, it fails on the merits.
24
                Specifically, had counsel objected, the objection would have been
25              overruled, as there was sufficient evidence presented to the jury to
                find the petitioner guilty of first degree murder on a premeditation
26              and deliberation theory.  If counsel's objection had been made and

                                            27

1
2
3
4

> had been meritoriously based solely on a *Sheppard* theory, counsel
> could have requested to be allowed to reopen the presentation of
> evidence and/or argument, so as to meet the theory, and such a
> request would have been granted.  As such, no prejudice ensued
> from the failure to object to the instructions as given, requiring
> denial of this habeas claim under *Bower, supra*, and *Strickland v.
> Washington* (1984) 466 U.S. 668.

5   Superior Court Opinion at 3-4.

6        Because significant evidence supported a theory of first degree murder based on

7   premeditation and deliberation, any challenge to this instruction would have been denied.  An

8   attorney's failure to make a meritless objection or motion does not constitute ineffective

9   assistance of counsel.  *Jones v. Smith*, 231 F.3d 1227, 1239 n.8 (9th Cir. 2000) (citing *Boag v.

10  Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985)).  *See also Rupe v. Wood*, 93 F.3d 1434, 1445 (9th

11  Cir. 1996) ("the failure to take a futile action can never be deficient performance").  The

12  Superior Court's conclusion that petitioner did not suffer prejudice from his trial counsel's

13  failure to object to the jury instruction on premeditation and deliberation is not an unreasonable

14  application of United States Supreme Court authority and should not be set aside.  *Fry*, 551 U.S.

15  at 119.

16                    c.  **Failure to Object to Restitution Fine**

17       Petitioner claims that his trial counsel rendered ineffective assistance at the sentencing

18  proceedings when he failed to object to the court's imposition of restitution fines and jail fees.

19  P&A at 8-13.  Petitioner also argues that counsel's failure to advocate on his behalf at the

20  sentencing hearing resulted in a constructive denial of the assistance of counsel at a critical phase

21  of the proceedings, resulting in prejudice per se.  *Id.*

22       The California Superior Court rejected these arguments, reasoning as follows:

23
24
25

> Petitioner next claims that he was denied effective assistance of
> trial counsel at sentencing, in that counsel failed to object to the
> trial court's imposition of $5000 in victim restitution, and $1200 in
> a restitution fine and jail fees, based on inability of petitioner to
> pay.

26  ////

Petitioner, however, fails to attach any reasonably available documentary evidence to show what trial counsel could have introduced at sentencing to prove that he had an inability to pay. Nor would it appear that a trial court would have determined he had inability to pay, since he was sentenced to 50 years to life in prison, he does not allege that he is not able-bodied and cannot work in prison during that prison term, and the amounts are low enough that it possible [sic] for petitioner to continue to pay on the amounts throughout his prison term.  As such, the claim fails under *Bower, supra, in re Swain* (1949) 34 Cal.2d 300, and *In re Harris, supra,* 5 Cal.4th 813, 827 fn. 5.

Petitioner also claims that trial defense counsel was ineffective in failing to object to the court's determination of the amount of victim restitution and to the failure of the victim's family to submit any documentation to the court to prove that amount.  This, however, should have raised the issue on appeal [sic], as the claim goes to whether the trial court abused its discretion in imposing victim restitution in an amount not shown by sufficient evidence at the sentencing.  Insofar as the claim could have been but was not raised on appeal, it is barred from habeas corpus review under *Dison, supra*,  Insofar as any ineffective assistance of trial counsel portion of it is made in this claim, to prevail on habeas corpus petitioner would still need to now show what trial counsel could have introduced at sentencing that would have refuted the amount claimed by the victim's family for burial of the victim.  Not having attached any reasonably available documentary evidence in this regard, this portion of the claim fails under *Bower, supra*, *Swain, supra,* and *Harris, supra*.

Superior Court Opinion at 4.

Petitioner's claim that his trial counsel rendered ineffective assistance at the sentencing proceedings should be rejected.  The Ninth Circuit Court of Appeals has concluded that "there is no clearly established federal law" regarding the standard for ineffective assistance of counsel at sentencing in noncapital cases.  *Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1244 (9th Cir. 2005).  When the Supreme Court established the test for ineffective assistance of counsel claims in *Strickland*, the Court expressly declined to "consider the role of counsel in an ordinary sentencing, which . . . may require a different approach to the definition of constitutionally effective assistance."  *Id.*  In the years since *Strickland* was decided, the Supreme Court has not announced what standard should apply to ineffective assistance of counsel claims in the context of sentencing proceedings in noncapital cases.  *Id.*  Because there is no clearly established

United States Supreme Court case which "squarely addresses" this issue, the state court did not unreasonably apply federal law in concluding that petitioner was not entitled to relief with respect to this claim. *See Moses v. Payne*, 555 F.3d 742, 760 (9th Cir. 2009) (in the absence of a Supreme Court decision that "squarely addresses the issue" in the case before the state court, a reviewing court in a habeas corpus action cannot conclude that a state court's adjudication of that issue resulted in a decision contrary to, or an unreasonable application of, clearly established Supreme Court precedent).

Moreover, the state court's conclusion that petitioner failed to demonstrate prejudice resulting from the actions of his trial counsel is not an unreasonable application of *Strickland*. As explained by the Superior Court, there is no evidence petitioner could not pay a fine from his jail earnings or that the victim's family overstated the amount spent on burying the victim. Nor has petitioner established that his trial counsel's performance at the sentencing proceedings was so egregiously prejudicial that ineffective assistance of counsel should be presumed. *Cf. United States v. Cronic*, 466 U.S. 648, 659 (1984) (where counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, the adversary process is rendered presumptively unreliable and prejudice is presumed). Accordingly, petitioner is not entitled to relief on this claim of ineffective assistance of trial counsel.

**III.  Conclusion**

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v.*

1  *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In

2  his objections petitioner may address whether a certificate of appealability should issue in the

3  event he files an appeal of the judgment in this case.  *See* Rule 11, Federal Rules Governing

4  Section 2254 Cases (the district court must issue or deny a certificate of appealability when it

5  enters a final order adverse to the applicant).

6  DATED:  September 13, 2010.

7

8                              EDMUND F. BRENNAN
                               UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26